# EXHIBIT A

# SUMMONS

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

Case Style:

**KATHLEEN S. CLARKE**

    Plaintiff,

v.

CIVIL ACTION NO. 21-C-609
JUDGE Bloom

**TANGO NETWORKS, INC.,**
**NEXTEP BUSINESS SOLUTIONS, INC.,**
**TRINET HR III-A, INC., also d/b/a**
**TRINET GROUP, INC., and**
**MICHAEL BISHOP,**

    Defendants.

To:    Michael Bishop

**TO THE ABOVE-NAMED DEFENDANT:**

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon **Todd S. Bailess and Jodi R. Durham of Bailess Law Firm PLLC, 5312 MacCorkle Avenue, SW, #326, Charleston, West Virginia 25309,** Plaintiff's attorneys, an answer to the *Complaint* filed against you in the above-styled civil action, a true copy of which is herewith delivered to you. You may assert in your answer any claim you may have against the plaintiff which is related to the subject matter of the complaint. You are required to serve your answer within **20** days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint and you will be thereafter barred for asserting in another action any claim you may have which must be asserted by counterclaim in the above styled civil action.

DATED July 22 2021                                CLERK Cathy S. Gatson, Clerk

                                                                                                      KSM

KSM

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

COPY

**KATHLEEN S. CLARKE**

Plaintiff,

v.

CIVIL ACTION NO.: 21 C 609
JUDGE: Bloom

**TANGO NETWORKS, INC.,
NEXTEP BUSINESS SOLUTIONS, INC.,
TRINET HR III-A, INC., also d/b/a
TRINET GROUP, INC., and
MICHAEL BISHOP,**

Defendants.

## COMPLAINT

Now Comes, Kathleen Clarke ("Plaintiff"), by counsel, for her Complaint against Tango Networks, Inc. ("Tango Networks"), Nextep Business Solutions, Inc. ("Nextep"), TriNet HR III-A, Inc., also doing business as TriNet Group, Inc. ("TriNet") (sometimes referred to collectively as "TNT"), and Michael ("Mike") Bishop (collectively, "Defendants") for violations of the West Virginia Human Rights Act ("WVHRA"), W. Va. Code § 5-11-1, *et seq.*, unlawful retaliation in violation of substantial public policy of West Virginia and battery.

## NATURE OF THE CASE

1.      Defendants TNT condoned a workplace culture abusive toward females. Defendant Bishop, a representative of TNT, intentionally and forcefully grabbed Plaintiff's breast in an elevator on a work trip causing Plaintiff humiliation and embarrassment. Plaintiff reported the sexually harassing incident to her direct supervisor and the President and CEO of TNT, Doug Bartek. Upon information and belief, Defendant Bishop admitted to the battery. TNT chose to retain Defendant Bishop as an employee despite knowing he violated Plaintiff's right to be free of

unlawful touching. Following Plaintiff's reports of sexual harassment, Defendants TNT through its agents/supervisors engaged in recurring retaliation against Plaintiff forcing her to constructively discharge herself from the workplace.

## PARTIES & JURISDICTION

2. Plaintiff is a resident of West Virginia. At all times relevant herein, she worked as a Sales Director for Defendants TNT. Although Plaintiff to traveled at times for work, she primarily performed work for Defendants TNT in Kanawha County, West Virginia.

3. Defendant Tango Networks is a Delaware corporation with its principal place of business in Frisco, Texas. At all times relevant herein, Defendant Tango Networks jointly employed Plaintiff.

4. Defendant Nextep is a Texas corporation with its principal place of business in Norman, Oklahoma. At all times relevant herein, Defendant Nextep jointly employed Plaintiff.

5. Upon information and belief, at times relevant herein, Defendants Tango Networks and Nextep were in a contractual, co-employment relationship, wherein Defendant Nextep provided services to help administer payroll, provide employee benefits, and assist with human resources and risk management to Plaintiff.[1] Under this contractual relationship, Defendants Tango Networks and Nextep shared, agreed to allocate responsibility for, and/or co-determined the essential terms and conditions of Plaintiff's employment. Specifically, Defendant Nextep provided an employee handbook to Plaintiff, setting forth workplace policies and procedures related to at-will employment, harassment, discrimination, and retaliation to which Plaintiff was subjected; maintained, either directly and/or indirectly, the ability to discipline and/or terminate

---

[1] The relationship between Defendants Tango Networks and Nextep described herein was set forth in Plaintiff's Nextep, Inc. & Tango Networks, Inc. Employee Handbook. Specifically, Defendants Tango Networks and Nextep are defined as Plaintiff's "employers [with] certain rights and responsibilities with respect to [Plaintiff's] employment."

Plaintiff for failing to follow workplace policies and procedures; issued Plaintiff's paystubs; prepared Plaintiff's wage and tax statement ("IRS Form W-2"); and provided health, dental, and workers' compensation insurance coverage to Plaintiff. Accordingly, Defendants Tango Networks and Nextep jointly employed Plaintiff as contemplated by *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 141-42 (4th Cir. 2017) (citation omitted).

6. Defendant TriNet is a Delaware corporation with its principal place of business in Dublin, California. At all times relevant herein, Defendant TriNet jointly employed Plaintiff.

7. Upon information and belief, at times relevant herein, Defendants Tango Networks partnered with TriNet to form a co-employment relationship, wherein Defendant TriNet provided services to pay employee wages, sponsor and administer employee benefits, process and maintain certain worksite employee records, and perform other related HR functions.[2] Under this co-employment relationship, Defendants Tango Networks and TriNet shared, agreed to allocate responsibility for, and/or co-determined the essential terms and conditions of Plaintiff's employment. Specifically, Defendant TriNet provided an employee handbook to Plaintiff, setting forth workplace policies and procedures related to at-will employment, harassment, discrimination, and retaliation to which Plaintiff was subjected; maintained, either directly and/or indirectly, the ability to discipline and/or terminate Plaintiff for failing to follow workplace policies and procedures; issued Plaintiff's paystubs; prepared Plaintiff's wage and tax statement ("IRS Form W-2"); and provided health, dental, vision, life, and workers' compensation insurance coverage to Plaintiff. Accordingly, Defendants Tango Networks and TriNet jointly employed Plaintiff as contemplated by *Salinas*, 848 F.3d at 141-42 (citation omitted).

---

[2] The relationship between Defendants Tango Networks and TriNet described herein was set forth in Plaintiff's TriNet Worksite Employee Handbook. By partnering with Defendant TriNet, Plaintiff's employee handbook described Defendant Tango Networks as electing "to share several important employer responsibilities with TriNet."

8. Defendants Tango Networks, Nextep, and TriNet are "corporations" within the meaning of the term "persons" of the WVHRA, W. Va. Code § 5-11-3(a), and are each liable for the acts described herein, in the engagement of unlawful reprisal as set forth in W. Va. Code § 5-11-9(7)(C). See *State ex rel. Grant Cty. Comm'n v. Nelson*, 856 S.E.2d 608, 622-23 (W. Va. 2021) (Walker, J., dissenting) (discussing the potential for liability violations for those not fitting the definition of "employer" under the WVHRA, and that the term "person" is defined very broadly and does not exclude public entities); see also *Michael v. Appalachian Heating, LLC*, 701 S.E.2d 116, 124 (W. Va. 2010) (finding an insurance company to be included as an "organization" or "corporation" within the meaning of the broadly defined term "person" of the WVHRA).

9. Upon information and belief, Defendant Mike Bishop is a resident of Texas, and at all times relevant herein was jointly employed by Defendants Tango Networks and Nextep or TriNet.

10. Venue and jurisdiction are proper in this Court as a substantial part of the events or omissions giving rise to this cause of action occurred in Kanawha County, West Virginia.

## FACTS

11. Plaintiff worked for Defendants TNT as a Sales Director from approximately May 13, 2019, until her constructive discharge on or around December 4, 2020.[3]

12. During her employment, Plaintiff performed her duties in a satisfactory manner and met the reasonable expectations of Defendants TNT.

---

[3] Upon information and belief, Defendant Tango Networks ended its contractual, co-employment relationship with Defendant Nextep in approximately December 2019, and entered into another contractual, co-employment relationship with Defendant TriNet in or around early 2020. As such, Plaintiff was jointly employed by both Defendants Tango Networks and Nextep, and Defendants Tango Networks and TriNet, during the course of her employment.

4

13. Upon information and belief, Defendant Tango Networks is a telecommunication company that enables businesses to extend their applications, such as workplace phones, to any mobile device. In doing so, Defendant Tango Networks allows businesses to transform mobile phones into primary communication tools to be used by remote and/or out-of-office employees. Defendant Tango Networks utilizes a partner program, wherein it works closely with distributors, channels, integrators, and technology partners to revolutionize business mobile communications.

14. As Sales Director, Plaintiff's job duties involved implementing strategy and marketing plans to recruit technology partners for Defendants TNT in the United States and globally. As such, Plaintiff frequently traveled to business events, nationally and internationally, to recruit new partners, procure new business, and maintain Defendants TNT's existing business relationships.

15. During her employment with Defendants TNT, Plaintiff reported to Defendants' Vice President of Global Channel Sales, Pamela Strong. Plaintiff worked as part of a team for Defendants TNT, which included, Ms. Strong, Michael Wheelock (Director of Sales, Sales Engineering, and Sales Operations), and Defendant Bishop (Director of Sales Engineering).

16. From May 20, 2019, through May 24, 2019, Plaintiff, Ms. Strong, Mr. Wheelock, and Defendant Bishop travelled to Orlando, Florida, to attend business meetings for Defendants TNT. While in Florida, Plaintiff learned during a conversation with Mr. Wheelock and Defendant Bishop that they were aware Plaintiff was recently divorced. At this time, Plaintiff confided to Mr. Wheelock and Defendant Bishop that she had been through a horrific divorce involving extreme domestic violence.

17. Nearly three months later, Plaintiff once again travelled for Defendants TNT for a two-part work trip: Part one of Plaintiff's trip involved staying overnight and attending meetings

in Bedford, New Hampshire, with Ms. Strong and Defendant Bishop, while part two involved Plaintiff and Defendant Bishop travelling without Ms. Strong to Chicago, Illinois. Plaintiff and Defendant Bishop flew from the Manchester-Boston Regional Airport in New Hampshire to Chicago, Illinois, on or around July 31, 2019.

18. In Chicago, Plaintiff and Defendant Bishop were scheduled for an early afternoon business meeting. They were also scheduled to stay in different hotels. Plaintiff was scheduled to stay at the Cambria Chicago Magnificent Mile Hotel. Defendant Bishop accompanied Plaintiff from the airport to her hotel to check in. After checking in, Plaintiff quickly unloaded her and Defendant Bishop's luggage into Plaintiff's room. They then left for their meeting.

19. Shortly thereafter, Plaintiff and Defendant Bishop returned from their meeting to Plaintiff's hotel. While at the hotel, Plaintiff and Defendant Bishop continued working in the hotel lobby. Once Defendant Bishop was ready to leave, Defendant Bishop followed Plaintiff to her hotel room to retrieve his luggage. While alone with Plaintiff on the elevator, Defendant Bishop stated, "You are probably going to be mad, but I have to do this," and lunged at Plaintiff to squeeze her breast. Defendant Bishop further stated, "I have a thing for boobs. They are my weakness. And yours are perfect."

20. Plaintiff was offended by Defendant Bishop's unwelcomed touching. Thereafter, Plaintiff reported the elevator incident to her supervisor, Ms. Strong, who directed Plaintiff to document the incident in writing and communicate it to Defendants' Human Resources ("HR") department. As such, on August 5, 2019, Plaintiff reported Defendant Bishop's touching to Defendants' HR department via email.

21. On August 6, 2019, Defendants' Vice President ("VP") of Finance and Controller, Tara Hurley, replied to Plaintiff's email, asking Plaintiff to call her for an update regarding the

incident Plaintiff reported. When Plaintiff contacted Ms. Hurley, Plaintiff was advised that Mr. Bartek (Defendant Tango Networks' President and CEO), Ms. Hurley, Defendant Bishop, and Ms. Strong (via telephone) met internally in Texas, and that a decision was made to retain Defendant Bishop. Ms. Hurley also offered to provide Plaintiff with counseling.

22. Thereafter, on August 8, 2019, Plaintiff emailed Ms. Hurley to accept the offer of counseling, and she asked Ms. Hurley to advise what counseling options were available to Plaintiff. Ms. Hurley did not reply to Plaintiff's email until she was prompted by a second email from Plaintiff on August 19, 2019.

23. On August 8, 2019, Plaintiff also exchanged emails with Mr. Bartek, wherein he assured Plaintiff the "right thing(s) [would] be done as a result of the action" and that he was "making the punishment, corrections, and resolution a top priority." Mr. Bartek further assured Plaintiff that she would "never have to worry about retaliation."

24. On August 12, 2019, Defendants TNT directed Plaintiff to attend a telephone call that included Defendant Bishop (the harasser), Mr. Bartek, Ms. Hurley, and Ms. Strong to discuss the incident. Being required to attend a telephone call with Defendant Bishop to discuss his sexually offensive conduct toward Plaintiff, caused Plaintiff even more distress. Despite Mr. Bartek's prior assurances, no safety plan was communicated to Plaintiff during the phone call as to how Defendants TNT would prevent further sexual harassment and hostility from Defendant Bishop. Also, during the phone call, Defendant Bishop made an admission against interest by apologizing to Plaintiff for his actions. Plaintiff did not believe Defendant Bishop's apology to be sincere based upon his tone.

25. Following the phone call, Defendants TNT continued to schedule Plaintiff on work trips to attend meetings and/or events with Defendant Bishop, including the following:

(a) <u>August 13, 2019 – August 15, 2019</u>: Immediately after the telephone call on August 12, 2019, Defendants TNT arranged for Plaintiff and Defendant Bishop to travel to Montreal, Canada. Ms. Strong was also present on the trip. Plaintiff attempted to stay with Ms. Strong at all times. However, Defendant Bishop still found Plaintiff, alone, on an elevator and joined her. Being alone in an elevator with Defendant Bishop again, caused Plaintiff distress;

(b) <u>September 23, 2019 – September 27, 2019</u>: Defendants TNT arranged for Plaintiff to travel to Dallas, Texas. There, Plaintiff was forced again to attend business meetings and dinner events with Defendant Bishop;

(c) <u>October 1, 2019 – October 6, 2019</u>: Defendants TNT arranged for Plaintiff and Defendant Bishop to travel to Toronto, Canada. Ms. Strong, too, was present on the trip. However, Defendant Bishop waited until Plaintiff was alone to approach her. He cruelly told Plaintiff that he wanted to thank Plaintiff for reporting him, that he and his wife had been having problems for over ten years, and that Plaintiff reporting him was helping his marriage situation. Defendant Bishop also told Plaintiff that he previously admitted the July 31, 2019, elevator incident to Mr. Bartek, and Mr. Bartek told him he was not being fired. Plaintiff felt Defendant Bishop was taunting and intimidating her for reporting the sexual harassment.

(d) <u>In or around February 2020</u>: Defendants TNT arranged for Plaintiff to travel to Texas for a sales meeting kickoff. At a boardroom meeting during the trip which included Mr. Bartek, Defendant Bishop invaded Plaintiff's personal space and selectively chose to sit directly beside Plaintiff. Moreover, a golfing event was scheduled during the trip as a required team building exercise. The only option presented to Plaintiff for participating in the event was to join Defendant Bishop's team. Plaintiff refused to participate and felt shunned by her colleagues.

8

26. After the incident in Toronto, Plaintiff called Mr. Bartek on or around October 6, 2019, to report Defendant Bishop's inappropriate behavior during the work trip. Mr. Bartek rushed Plaintiff off the phone and failed to take any action to protect Plaintiff from further hostility. Mr. Bartek told Plaintiff he would check on her periodically, but he never did.

27. Following Plaintiff's reports of sexual harassment, Plaintiff was treated differently by Defendants TNT. Plaintiff noticed changes in the attitudes of her colleagues, including Ms. Hurley. For instance, on October 10, 2019, Plaintiff spoke by telephone with Ms. Hurley, who chastised Plaintiff for having called Mr. Bartek instead of Ms. Hurley. During the phone call, Plaintiff also told Ms. Hurley that she felt sick over the way the (Bishop) situation was being handled and did not want retaliation by the company.

28. Shortly after Plaintiff's trip in February 2020, a global health emergency over the outbreak of the severe acute respiratory syndrome coronavirus 2 ("SARS-CoV-2"), more commonly known as "COVID-19," occurred and temporarily halted Plaintiff's required work trips. However, this did not stop Plaintiff from having to encounter Defendant Bishop. Defendants TNT required Plaintiff to attend weekly video calls, wherein Defendant Bishop was present. Plaintiff repeatedly reported to her supervisors that having to see and interact with Defendant Bishop caused her distress.

29. On different occasions in or around July 2020, Plaintiff continued to report her distress regarding the video calls with Defendant Bishop to Mr. Bartek, Ms. Hurley, and Robert Hedgewood (Defendant Tango Networks' Chief Operating Officer). However, no action was taken by Plaintiff's supervisors to protect Plaintiff from these weekly meetings.

30. Around this same time, Plaintiff was due for a compensation and performance review by Defendants TNT. As Plaintiff's direct supervisor, Ms. Strong, was terminated by

Defendants TNT in or around August 2020, Plaintiff contacted her interim boss, Philip Hesketh, on or around September 6, 2020, to schedule her review. Mr. Hesketh responded to Plaintiff that he did not believe it was a good time to approach Mr. Bartek about Plaintiff's compensation, and he did not conduct Plaintiff's review.

31. Furthermore, in or around November 2020, Plaintiff learned Defendants TNT excluded her from a business meeting in which she should have been included. Specifically, Plaintiff had been responsible for signing and managing Defendants TNT's partner, Atlantech Online. Plaintiff learned that Atlantech Online had a business opportunity with another partner Plaintiff managed for Defendants TNT, JS Foods. Mr. Bartek chose to exclude Plaintiff, and he took Defendant Bishop to a business meeting he arranged between representatives from Atlantech Online and JS Foods. Despite being an essential job function for Plaintiff to maintain relationships with Atlantech Online and JS Foods, Plaintiff was not invited to the meeting or provided any updates about how the meeting went.

32. Defendants TNT's failure to alleviate the sexual harassment by Defendant Bishop, exclusion of Plaintiff from the business meeting in November 2020, refusal to conduct Plaintiff's performance evaluation, and repeated requirement of Plaintiff to travel and/or attend video calls with Defendant Bishop after the workplace sexual battery was in retaliation for her protected reports of sexual harassment.

33. In light of the retaliatory conduct and hostile work environment, Plaintiff was forced to constructively discharge herself from the workplace.

**FIRST CAUSE OF ACTION**
*Intentional Tort: Battery*
(Against Defendant Bishop)

34. This paragraph incorporates by reference all of the preceding paragraphs as if they were set forth fully herein.

35. Defendant Bishop acted with the intention of causing harmful or offensive contact with the Plaintiff's person, and a harmful or offensive contact with the Plaintiff's person directly or indirectly resulted from Defendant Bishop's actions. See *McKenzie v. Sevier*, 854 S.E.2d 236, 245 (W. Va. 2020) (citations omitted); see also *Restatement (Third) of Torts*, §§ 13, 18 (2013).

36. As a direct and proximate result of Defendant Bishop's actions, Plaintiff is entitled to each of the following separate general damages in an amount to be determined by a jury:

    (a) Loss of dignity;

    (b) Embarrassment;

    (c) Humiliation;

    (d) Mental anguish/emotional distress; and

    (e) Insult.

*Criss v. Criss*, 356 S.E.2d 620, 622 (W. Va. 1987) (citations omitted).

37. Defendant Bishop's unlawful actions were willful, wanton, and/or intentional and were undertaken with reckless disregard and indifference to the rights of Plaintiff. Accordingly, as a direct and proximate result of Defendant Bishop's actions, Plaintiff is entitled to punitive damages in an amount to be determined by a jury. *Addair v. Huffman*, 195 S.E.2d 739, 743 (W. Va. 1973) (citation omitted).

## SECOND CAUSE OF ACTION
*Common Law Wrongful Discharge*
(Against Defendants TNT)

38. This paragraph incorporates by reference all of the preceding paragraphs as if they were set forth fully herein.

39. Defendants TNT's retaliation against Plaintiff was, in whole or in part, based upon Plaintiff's reports of sexual harassment/hostile work environment.

40. Following Plaintiff's reports of sexual harassment/hostile work environment, Defendants TNT treated Plaintiff differently than she was accustomed to prior to her protected activity. As stated herein, Defendants TNT failed to provide Plaintiff a workplace free of sexual harassment/hostile following her reports of sexual harassment, excluded Plaintiff from a business meeting, refused to conduct Plaintiff's performance evaluation, and repeatedly required Plaintiff to travel and/or attend video calls with Defendant Bishop after the workplace battery.

41. Defendants TNT, through their supervisors/agents, constructively discharged Plaintiff, in whole or in part, based upon her reports of sexual harassment/hostile work environment.

42. Defendants TNT's actions constitute unlawful discriminatory/retaliatory practices in violation of the State of West Virginia's substantial public policy to prohibit retaliation by an employer or other person against any individual, who expresses opposition to a practice that she reasonably and in good faith believes violates the provisions of the WVHRA. See W. Va. Code § 5-11-9(7)(C); *Williamson v. Greene*, 490 S.E.2d 23, 31-32 (W. Va. 1997).

43. Defendants TNT's retaliation against and unlawful discharge of Plaintiff based, in whole or in part, upon Plaintiff's complaints of sexual harassment/hostile work environment jeopardizes the substantial public policy of West Virginia, as set forth in paragraph 42, *supra*.

44. Accordingly, Defendants TNT's actions constitute retaliatory/wrongful discharge in violation of a substantial public policy pursuant to *Harless v. First Nat'l Bank*, 246 S.E.2d 270 (1978).

45. As a direct and proximate result of Defendants TNT's actions, Plaintiff is entitled to each of the following separate general damages in an amount to be determined by a jury:

    (a)    Loss of dignity;

    (b)    Embarrassment;

    (c)    Humiliation;

    (d)    Aggravation; and

    (e)    Emotional distress.

46. As a direct and proximate result of Defendants TNT's actions, Plaintiff has suffered and will continue to suffer lost wages and benefits in an amount to be determined by a jury.

47. Defendants TNT's unlawful discriminatory/retaliatory actions were willful, wanton, and/or intentional and were undertaken with reckless disregard and indifference to the rights of Plaintiff. Accordingly, as a direct and proximate result of Defendants TNT's actions, Plaintiff is entitled to punitive damages in an amount to be determined by a jury.

48. As a direct and proximate result of Defendants TNT's actions, Plaintiff is entitled to her attorneys' fees and costs.

### THIRD CAUSE OF ACTION
*Reprisal*
(Against Defendants TNT)

49. This paragraph incorporates by reference all of the preceding paragraphs as if they were set forth fully herein.

50. Defendants TNT, as "persons" under the WVHRA, W. Va. Code § 5-11-3(a), retaliated against Plaintiff in violation of W. Va. Code § 5-11-9(7)(C), in whole or in part, based upon her reports of sexual harassment/hostile work environment. See ¶¶ 8, and 25-32, *supra*.

51. Plaintiff engaged in a protected activity by reporting sexual harassment/hostile work environment in the workplace. See Syl. pt. 4, *Frank's Shoe Store v. West Virginia Human Rights Commission*, 365 S.E.2d 251 (W. Va. 1986) (setting forth the elements of a *prima facie* case for a reprisal claim under the WVHRA).

52. Defendants TNT were aware of Plaintiff's protected activity. *Id.*; see also ¶¶ 20-24, and 26-29, *supra*.

53. Plaintiff constructively discharged herself from the workplace. See *Frank's Shoe Store*, 365 S.E.2d at Syl. pt. 4; see also ¶¶ 11 and 33, *supra*.

54. Plaintiff's protected conduct and Defendants TNT's adverse employment action occurred within a time period that raises an inference of retaliation and/or recurring retaliation and that animus existed toward Plaintiff. See *Frank's Shoe Store*, 365 S.E.2d at Syl. pt. 4; see also ¶¶ 25-32, *supra*.

55. As a direct and proximate result of Defendants TNT's actions, Plaintiff is entitled to each of the following separate general damages in an amount to be determined by a jury:

    (a)    Loss of dignity;

    (b)    Embarrassment;

    (c)    Humiliation;

    (d)    Aggravation; and

    (e)    Emotional distress.

56. As a direct and proximate result of Defendants TNT's actions, Plaintiff has suffered and will continue to suffer lost wages and benefits in an amount to be determined by a jury.

57. Defendants TNT's unlawful discriminatory/retaliatory actions were willful, wanton, and/or intentional and were undertaken with reckless disregard and indifference to the rights of Plaintiff. Accordingly, as a direct and proximate result of Defendants TNT's actions, Plaintiff is entitled to punitive damages in an amount to be determined by a jury.

58. Defendants TNT's actions violated the WVHRA entitling Plaintiff to her attorneys' fees and costs pursuant to W. Va. Code § 5-11-13.

## FOURTH CAUSE OF ACTION
### *Constructive Discharge*
### (Against Defendants TNT)

59. This paragraph incorporates by reference all of the preceding paragraphs as if they were set forth fully therein.

60. Defendants TNT created and/or condoned a hostile work environment that no reasonable person could tolerate.

61. The intolerable work environment created and/or condoned by the Defendants TNT: (1) was based upon the Plaintiff's sex; (2) was created by and/or known to the Defendants TNT; (3) constituted an unlawful discriminatory/retaliatory practice under the WVHRA; (4) resulted in working conditions created by or known to Defendants TNT that were so intolerable that a reasonable person would be compelled to quit; and (5) forced Plaintiff to resign her employment as a direct and proximate result of the hostile and abusive working conditions created by or known to Defendants TNT, including retaliation in the workplace.

62. Plaintiff was constructively discharged from her employment with Defendants TNT. *Id.*; see also ¶¶ 11 and 33, *supra*.

15

63. As a direct and proximate result of Defendants TNT's actions, Plaintiff is entitled to each of the following separate general damages in an amount to be determined by a jury:

    (a) Loss of dignity;

    (b) Embarrassment;

    (c) Humiliation;

    (d) Aggravation; and

    (e) Emotional distress.

64. As a direct and proximate result of Defendants TNT's actions, Plaintiff has suffered and will continue to suffer lost wages and benefits in an amount to be determined by a jury.

65. Defendants TNT's unlawful discriminatory/retaliatory actions were willful, wanton, and/or intentional and were undertaken with reckless disregard and indifference to the rights of Plaintiff. Accordingly, as a direct and proximate result of Defendants TNT's actions, Plaintiff is entitled to punitive damages in an amount to be determined by a jury.

66. Defendants TNT's actions violated the WVHRA entitling Plaintiff to her attorneys' fees and costs pursuant to W. Va. Code § 5-11-13.

**WHEREFORE**, Plaintiff prays for the following relief:

1. That the Court enter judgment against the Defendants on all counts alleged in this Complaint;

2. All remedies afforded under Plaintiff's common law retaliatory discharge claim;

3. All remedies afforded under the WVHRA;

4. All damages available resulting from Plaintiff's tort claims;

5. Lost wages, i.e. back pay/front pay

6. Pre and post-judgment interest as provided by law;

7. Punitive damages;

8. Attorneys' fees and costs; and

9. Plaintiff is not seeking reinstatement at this time.

**PLAINTIFF DEMANDS A JURY TRIAL**

                                          **KATHLEEN S. CLARKE**
                                          by Counsel,

*/s/ Jodi Durham*
Todd S. Bailess (WVSB #10482)
Jodi R. Durham (WVSB #13393)
**BAILESS LAW FIRM PLLC**
5312 MacCorkle Avenue, SW, #326
Charleston, West Virginia 25309
Telephone: (304) 413-1400
Facsimile: (304) 413-1401

## Table of Contents

**Subject Summary** ........................................................................................................ 2
**Others Using SSN - 0 records found** ......................................................................... 2
**Address Summary - 10 records found** ...................................................................... 3
**Voter Registrations - 3 records found** ...................................................................... 8
**Driver Licenses - 5 records found** ............................................................................ 9
**Professional Licenses - 0 records found** ................................................................. 9
**Health Care Providers - 0 records found** ................................................................. 9
**Health Care Sanctions - 0 records found** ................................................................ 9
**Pilot Licenses - 0 records found** .............................................................................. 9
**Sport Licenses - 0 records found** ............................................................................. 9
**Weapon Permits - 0 records found** .......................................................................... 9
**Real Property - 2 records found** ............................................................................. 11
**Motor Vehicle Registrations - 11 records found** ................................................... 12
**Boats - 0 records found** .......................................................................................... 12
**Aircraft - 0 records found** ....................................................................................... 12
**Bankruptcy Information - 0 records found** ............................................................ 12
**Judgments/Liens - 0 records found** ....................................................................... 12
**UCC Liens - 0 records found** .................................................................................. 12
**Fictitious Businesses - 0 records found** ............................................................... 12
**Notice Of Defaults - 0 records found** ..................................................................... 12
**Potential Relatives - 10 records found** .................................................................. 22
**Business Associates - 0 records found** ................................................................ 22
**Person Associates - 0 records found** .................................................................... 25
**Neighbors - 10 records found** ................................................................................ 26
**Employment Locator - 1 records found** ................................................................ 27
**Criminal Filings - 2 records found** ......................................................................... 27
**Sexual Offenders - 0 records found** ...................................................................... 29
**Cellular & Alternate Phones - 3 records found** .................................................... 29
**Utility Information - 2 records found** ..................................................................... 30
**Possible Education - 1 records found** ................................................................... 31
**Sources - 153 records found** .................................................................................. 32